In re PHILADELPHIA
NEWSPAPERS,
LLC

Alycia Lane, Appellant,

v.

Philadelphia Newspapers,
LLC, Appellees.

Bankruptcy No. 09–11204.
Civil Action No. 09–4065.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 2010.

Anne Marie Aaronson, Joshua D. Wolson, Lawrence G. McMichael, Dilworth Paxson LLP, Philadelphia, PA, for Philadelphia Newspapers, LLC.

Paul R. Rosen, Spector Gadon & Rosen, P.C., Philadelphia, PA, for Alycia Lane.

Louise S. Melchor, Frey, Petrakis, Deeb, Blum & Briggs, Philadelphia, PA, for David Morgenstern.

Aris J. Karalis, Robert W. Seitzer, Maschmeyer Karalis, P.C., Philadelphia, PA, for Thomas A. Burlington, 401 Restaurant Associates, Alex Plotkin, James W. Robinson, Jr.

Alex Plotkin, Law Offices of Adrian J. Moody, PC, Philadelphia, PA, for James M. Deleon, James M. Deleon.

David Leigh, Philadelphia, PA, pro se.

Christopher Baxter, Philadelphia, PA, pro se.

Carlo Tedesco, Ambler, PA, pro se.

Gemma Tedesco, Ambler, PA, pro se.

Emmaline Armstrong, Gloucester, NJ, pro se.

Antwone Williams, Labelle, PA, pro se.

Anne Marie Aaronson, Lawrence G. McMichael, Dilworth Paxson LLP, Philadelphia, PA, for Philadelphia Newspapers, LLC.

Lawrence R. Woehrle, Sprague & Sprague, Philadelphia, PA, for Turquoise Erving.

Geoffrey R. Johnson, Sprague & Sprague, Philadelphia, PA, for Robert A. Brady.

Wayne A. Ely, Timothy M. Kolman and Associates, Penndel, PA, for Myra Belle Miller.

David P. Heim, Bochetto & Lentz PC, Philadelphia, PA, for International Brotherhood of Electrical Workers, Local 98, John J. Dougherty.

Andrew J. Defalco, Paul R. Rosen, Spector Gadon & Rosen, PC, Philadelphia, PA, for Alycia Lane.

United States Trustee, Office of the U.S. Trustee, Philadelphia, PA, pro se.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is an appeal from an order of the Bankruptcy Court which clarified the terms of a preliminary injunction to prohibit continuation of all aspects of

pending state court litigation against the above-captioned debtors' employees.

## I. BACKGROUND

Philadelphia Newspapers, LLC and its related debtor-entities (collectively, the "Debtors") filed for Chapter 11 bankruptcy protection on February 22, 2009.[1] Prior to this bankruptcy filing, Appellant Alycia Lane ("Lane") commenced an action in the Pennsylvania Court of Common Pleas (the "Lane Action") against the following defendants, CBS Broadcasting, Inc. ("CBS"), Michael Colleran ("Colleran"), Lawrence Mendte ("Mendte"), Philadelphia Newspapers, LLC d/b/a the Daily News ("PNL"), Philadelphia Media Holdings ("PMH"), and Dan Gross ("Gross").[2] Both PNL and PMH are Debtors in the above-captioned case. Gross is a reporter for the Daily News/PNL. CBS, Colleran and Mendte are not affiliated with the Debtors.

After the Debtors filed their respective bankruptcy petitions, both PNL and PMH were voluntarily dismissed from the Lane Action in order to allow Lane to proceed against the non-debtor entities in state court. Gross continues to be employed by the Debtors and remains a defendant in the Lane Action.

On March 23, 2009, the Debtors commenced an adversary proceeding (the "Adversary Proceeding") against several defendants, including Lane, and filed a motion for a temporary restraining order and preliminary injunction. On April 14, 2009, the Bankruptcy Court entered a temporary restraining order ("TRO") which precluded further litigation against Gross.[3]

On May 7, 2009, the Bankruptcy Court held an evidentiary hearing with respect to the Debtors' request for the entry of a preliminary injunction. Following this hearing, the Bankruptcy Court entered the preliminary injunction (the "Injunction") on May 8, 2009. The Injunction states, in pertinent part:

> Pursuant to sections 105(a) and 362(a) of the Bankruptcy Code, effective immediately and for a period of sixty (60) days from the date of entry of this order, the scope of the automatic stay is extended to include the Non–Debtors,[4] and Defendants are enjoined from continuing any action or legal proceeding (including, without limitation, any judicial quasi-judicial administrative or regulatory action, proceeding or process whatsoever), by way of direct claim, counterclaim, crossclaim, appeal or any other action against Non–Debtors, based upon the matters encompassed within the Second

1. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

2. That case currently is pending in the Pennsylvania Court of Common Pleas and is styled as *Alycia Lane v. CBS Broadcasting, Inc. t/a KYW–TV, Michael Colleran, Lawrence Mendte, Philadelphia Media Holdings, LLC, Philadelphia Newspapers, LLC t/a Philadelphia Daily News, and Dan Gross,* September Term 2008, No. 003425.

3. At the April 6, 2009 hearing, in response to an inquiry as to the scope of the TRO, the

Bankruptcy Court stated that "it does seem to me that what is good for the goose is definitely good for the gander, and to the extent that the stay is being applied to this litigation it is being applied to all parties who are least before me here today to that litigation." *In re Philadelphia Newspapers, LLC,* 410 B.R. 404, 406 (Bankr.E.D.Pa.2009) ("Philadelphia Newspapers I") (citing TRO Hr'g Tr. 98, April 6, 2009).

4. The May 8, 2009 Order defined the term "Non–Debtors" to include "certain reporters, editors or other employees of Debtor Philadelphia Newspapers, LLC," which ostensibly includes Gross.

Amended Complaint, as may be further amended.

*Id.* at 407 (citing Order Granting Motion For Preliminary Injunction Pursuant to 11 U.S.C. § 105, Rule 65 of the Federal Rules of Civil Procedure, and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure, May 8, 2009 at 3).

On May 18, 2009, another defendant in the Adversary Proceeding, Charter School Management, Inc., appealed the entry of the Injunction to this Court. On July 2, 2009, this Court affirmed the Bankruptcy Court's entry of the Injunction and held that: (1) the Bankruptcy Court had jurisdiction to issue the Injunction; (2) the Bankruptcy Court properly extended the automatic stay provided by 11 U.S.C. § 362 to the Non–Debtors; and (3) the Bankruptcy Court acted within its discretion to issue the Injunction pursuant to 11 U.S.C. § 105(a). *In re Philadelphia Newspapers, LLC,* 407 B.R. 606, 615–18 (E.D.Pa.2009) ("Philadelphia Newspapers II").

Subsequent to this Court's affirming the issuance of the Injunction, the Bankruptcy Court extended the expiration date of the Injunction on July 6, 2009, August 21, 2009, and October 30, 2009, respectively. In its current form, the Injunction is tailored to continue at least through confirmation of the Debtors' plan of reorganization.[5]

On June 10, 2009, while the Injunction was in effect and the appeal of the May 8, 2009 Order was pending before this Court, the Debtors filed a Motion for Clarification of Scope of Preliminary Injunction (the "Clarification Motion"). The purpose of the Clarification Motion was to request a ruling from the Bankruptcy Court as to whether the Injunction imposed reciprocal restrictions and barred the Debtors from pursuing their claims or defenses in the cases underlying the Adversary Proceeding, including the Lane Action. During the hearing on the Clarification Motion, Lane's counsel requested that the Bankruptcy Court limit the scope of the Injunction to allow Lane to proceed with discovery concerning Gross in the context of the Lane Action.

On August 5, 2009, the Bankruptcy Court issued an Order and Opinion in response to the Clarification Motion (the "August 5 Opinion"). In the August 5 Opinion, the Bankruptcy Court held that it possessed the power to enjoin third parties from pursuing discovery and that it was a proper exercise of its discretion to issue such an Injunction in the instant case. *Philadelphia I,* 410 B.R. at 412–15. In the August 5 Opinion, the Bankruptcy Court explicitly rejected Lane's argument that section 105(a) of the Bankruptcy Code could not be invoked in order to effectuate the automatic stay of section 362 to the Non–Debtors under the present circumstances. *Id.* at 413.

Furthermore, the Bankruptcy Court found that imposition of an Injunction to shield the Non–Debtors, including Gross, from discovery was in the best interest of the Debtors' estates in accordance with the requirements of section 105(a). *Id.* at 414–15. On this issue, the Bankruptcy Court specifically found that extension of the Injunction was warranted because the Debtors have undertaken an obligation to indemnify employees like Gross with respect to litigation such as the Lane Action. *Id.* at 414. Therefore, the Bankruptcy Court concluded that "each piece of litigation costs the company time, money, and ef-

---

**5.** When confirmation will actually occur is uncertain given that an appeal concerning the appropriate bidding procedures for an auction is currently before the Third Circuit Court of Appeals.

fort." *Id.* Moreover, the Court found that such litigation diverted the Debtors' key employees, such as their General Counsel (Scott Baker) and CEO (Brian Tierney), from the focus of the Debtors' overall reorganization efforts, which require considerable attention. *Id.* at 414–15. Finally, the Bankruptcy Court concluded that if Lane were permitted to conduct discovery with respect to Non–Debtor defendants in the Lane Action then litigants in other cases may seek to assert the same privilege, such that the "cumulative effect and drain on the Debtors of handling such discovery and motion practice could be enormous." *Id.* at 415.

On August 10, 2009, Appellant Lane filed a notice of appeal of the Bankruptcy Court's August 5 Opinion. Lane appealed the August 5 Opinion on the ground that the Bankruptcy Court's application of the Injunction to prohibit discovery with respect to Gross constitutes a reversible error. The parties have fully briefed the issues presented and this appeal is ripe for adjudication by this Court.

## II. DISCUSSION[6]

### A. *Standard of Review*

This Court applies a clearly erroneous standard to a bankruptcy court's findings of fact, plenary review over its conclusions of law, and bifurcates mixed questions of law and fact to apply the appropriate standard to each. *See In re Sharon Steel*

Corp., 871 F.2d 1217, 1222 (3d Cir.1989).[7] The Bankruptcy Court's issuance of a preliminary injunction is to be reviewed by this Court for abuse of discretion. *See Philadelphia Newspapers II*, 407 B.R. at 610 (citing *In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir.2002)). "An abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir.2004) (quoting *Official Comm. of Unsecured Debtors v. Nucor Corp. (In re SGL Carbon Corp.)*, 200 F.3d 154, 159 (3d Cir. 1999)).

### B. *Analysis*

■ This Court recently outlined the three steps necessary in determining whether the issuance of a preliminary injunction extending the automatic stay to non-debtor third parties under section 105(a) is appropriate: (1) whether the Bankruptcy Court had jurisdiction to issue the injunction; (2) whether the Bankruptcy Court properly extended the automatic stay under section 362(a) to the non-debtors; and (3) whether the Bankruptcy Court properly exercised its discretion in issuing the injunction. *Philadelphia Newspapers II*, 407 B.R. at 611.[8] The

**6.** This Court has jurisdiction to hear appeals "from final judgments, orders and decrees of the Bankruptcy Court." 28 U.S.C. §§ 158(a)(1). As the August 5 Opinion represents a final order, a finding that is not challenged by either party, this Court may properly exercise jurisdiction over this appeal.

**7.** Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to

the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013.

**8.** The Court recognizes that the caselaw concerning the use of authority conferred by section 105(a) to implement the substantive powers created by section 362(a) is not entirely consistent. *See id.* (noting that courts have often conflated the analysis of sections 362(a) and 105(a), and confused the issue); *compare A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999–1003 (4th Cir.1986) (using "stay"

same analytical framework applies to this case. As the same reasoning applies to the instant appeal, it is only necessary to briefly review the bases for the Court's approval of the Injunction in the *Philadelphia Newspapers II* decision. To the extent that any substantive differences exist, they are addressed in detail herein.[9]

### 1. Jurisdiction

■ "While § 105(a) of the Bankruptcy Code allows a bankruptcy court to issue any order necessary to carry out the provisions of the Code, it 'does not provide an independent source of federal subject matter jurisdiction.' " *In re W.R. Grace & Co.*, 591 F.3d 164, 170–71 (3d Cir.2009) (quoting *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir.2004)). Therefore, before proceeding to the merits of an injunction under section 105(a), it is the duty of the Bankruptcy Court to establish that it has subject matter jurisdiction to issue the injunction. *Id.* (citing *Combustion Eng'g*, 391 F.3d at 225 n. 35).

■ In *Philadelphia Newspapers II*, this Court concluded that jurisdiction was properly exercised by the Bankruptcy Court under "related to" jurisdiction provided by 28 U.S.C. § 1334(b) due to the impact of the litigation on the Debtors' reorganization efforts as well as the Debtors' practice of indemnifying its employees. *Philadelphia Newspapers II*, 407 B.R. at 614–15. The same grounds justifying "related to" jurisdiction exist with respect to application of the Injunction to the Lane Action in that monitoring discovery in the Lane Action will divert the attention of the Debtors' personnel and the Debtors may be obligated to indemnify Gross in the event of a judgment. Appellant Lane does not challenge the Bankruptcy Court's exercise of jurisdiction. Therefore, the Court concludes that the Bankruptcy Court properly exercised jurisdiction with respect to the Injunction.

### 2. Entitlement to Extension of Section 362(a) Stay

■ The next step in this analysis is a determination of whether the Bankruptcy Court properly extended the protection of section 362(a) to Gross. This constitutes a

---

and "injunction" interchangeably and pointing out that the bankruptcy court may enjoin lawsuits under section 362(a), section 105(a), or its inherent power) *with In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr.E.D.Pa. 1986) (granting an injunction under section 105(a), without discussion of section 362(a)). It is unnecessary, however, for the Court to delve into this analytical quagmire in order to resolve the current appeal. The parties spent a good deal of effort debating whether the order issued by the Bankruptcy Court constituted the extension of the stay under section 362(a) or an injunction under section 105(a). Faced with a similar issue, Judge Yohn stated:

> [I]t is unclear whether the Third Circuit views staying an action to aid a debtor's reorganization the result of extending the § 362(a) stay or the result of issuing a separate injunction pursuant to, for example, a district court's inherent power to stay a pending action or a bankruptcy court's power under § 105(a). This issue is aca-

demic, however, as the practical effect (i.e., the staying of an action) is the same regardless of the means employed.

*Stanford v. Foamex L.P.*, Civ. A. No. 07–4225, 2009 WL 1033607, at *1 n. 7 (E.D.Pa. Apr.15, 2009). This Court agrees that the exact terminology used by the Bankruptcy Court in issuing the Injunction is of no moment for purposes of this appeal.

9. The state court litigation previously considered by the Court in *Philadelphia Newspapers II* involved a defamation action filed by Charter School Management, Inc. The Lane Action involves state law claims for unlawful interception of electronic communications, invasion of privacy, intentional infliction of emotional distress, and civil conspiracy. For purposes of the analysis of the Injunction, the differences between the claims asserted in these respective suits are not substantive.

mixed question of law and fact for which the Court must decide whether the Bankruptcy Court's decision rested upon an errant conclusion or law or clearly erroneous finding of fact. *See Integrated Telecom Express*, 384 F.3d at 118.

The Third Circuit has recognized that section 362(a)'s protection is applicable to non-debtors where "unusual circumstances" exist, such as a unity of interest between the non-debtor and the debtor. *See McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509–10 (3d Cir.1997) (citing *A.H. Robins Co.*, 788 F.2d at 999); *Belcufine v. Aloe*, 112 F.3d 633, 637 n. 5 (3d Cir.1997) (citing *McCartney* and stating that the rationale for applying the automatic stay to non-debtors first articulated in *Robins* has been adopted in the Third Circuit). Whether unusual circumstances exist is an issue of fact.

In *Philadelphia Newspapers II*, this Court found that "unusual circumstances" existed to justify extension of the automatic stay for two reasons: (1) the Debtors owed potential indemnification obligations to their employees involved in state court litigation, such that the interests of the Debtors and their employees were identical; and (2) the diversion of resources involved with defending the pending state court litigation would divert the Debtors' resources and adversely impact the Debtors' attempted reorganization. *Philadelphia Newspapers II*, 407 B.R. at 616. As the same circumstances exist with respect to the Lane Action, the Court holds that the Bankruptcy Court's finding that suffi-

cient "unusual circumstances" existed to justify extension of section 362(a) to Gross was not clearly erroneous.

Appellant Lane contends, however, that in this instance, section 362(a) could not have been extended to Gross because the Debtors themselves were not protected from requests for production of information by the automatic stay. Appellant Lane argues that section 362(a) does not shield a debtor from responding to discovery requests with respect to claims which are not being asserted against the debtor. If this is so, Appellant Lane argues, section 105(a) could not be used to "extend" to Non–Debtors a protection that is not available to the Debtors under section 362(a) in the first instance. Whether a request for discovery from the Debtors falls within the protection of section 362(a) is an issue of law.

Appellant Lane relies on *Groner v. Miller (In re Miller)*, 262 B.R. 499, 503–507 (9th Cir. BAP 2001), in which a Bankruptcy Appellate Panel for the Ninth Circuit found that discovery requests served on a debtor in multi-defendant litigation that did not involve claims against the debtor did not violate the automatic stay. The court in *Miller*, relying solely on an analysis of the text of section 362(a),[10] reasoned that "information is information" and the mere fact that such information is sought from a debtor does not itself render it a violation of the automatic stay. *Miller*, 262 B.R. at 505. Although no circuit courts have addressed the *Miller* rationale, a number of bankruptcy courts and district

---

**10.** Section 362(a) states in pertinent part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
    (1) the commencement or continuation, including the issuance or employment of pro-

cess, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .
11  U.S.C. § 362(a).

courts have applied it. *See, e.g., In re Hillsborough Holdings Corp.,* 130 B.R. 603, 605–06 (Bankr.M.D.Fla.1991) (holding that the debtor was not protected from participating in discovery by section 362(a), but recognizing that "under appropriate circumstances it is proper to 'extend the automatic stay' to protect the non-debtors against discovery proceedings"); *In re Richard B. Vance & Co.,* 289 B.R. 692, 697 (Bankr.C.D.Ill.2003) (noting that although "there are valid arguments to the contrary, it is now generally accepted that discovery pertaining to claims against the bankrupts' codefendants is not stayed"); *Peter Rosenbaum Photography Corp. v. Otto Doosan Mail Order Ltd.,* Civ. A. No. 04–0767, 2004 WL 2973822, at \*3 (N.D.Ill. Nov.30, 2004) (relying on *Miller* and finding that discovery may proceed against a debtor provided that the discovery is directed towards the claims of non-debtor defendants).

The Court need not decide whether *Miller* states the applicable principle, a matter that is far from certain, since, in any event, *Miller* is distinguishable. In *Miller,* the discovery requests involved "information" to be used in a lawsuit the outcome of which would not affect the debtor or property of the debtor. Here, as stated above, the "information" sought is to be used in the prosecution of an action in which the employee of the Debtors is a defendant, which if found liable, the Debtors could have an obligation to indemnify. This obligation to indemnify, if triggered, would affect the property of the Debtors' estates. Thus, while in *Miller* the discovery requests would under no circumstances affect the property of the debtor, so much cannot be said here.

Therefore, the Court concludes that Appellant Lane's reliance on *Miller* is inapposite and that the Bankruptcy Court properly extended the automatic stay based upon the "unusual circumstances" present in this case.

3. Injunction under Section 105(a)

█ The final step in the Court's analysis is the determination of whether the Bankruptcy Court abused its discretion in finding that the Injunction shielded Gross from participating in discovery in the Lane Action. The Court applies the deferential abuse of discretion standard to this question.

Section 105 of the Bankruptcy Code states, in relevant part, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As the Third Circuit specifically explained in *Combustion Engineering,* section 105(a) does not create substantive rights that do not otherwise exist within the Bankruptcy Code. *Combustion Eng'g,* 391 F.3d at 236 (internal citations omitted).

The issuance of an injunction under section 105(a) is governed by the standards generally applicable to the issuance of injunctive relief in non-bankruptcy contexts. *See Matter of Brennan,* 198 B.R. 445, 452 (D.N.J.1996) ("In determining whether to issue a § 105 stay, bankruptcy courts also use [the] traditional four-pronged analysis.") (citing *In re Zenith Labs., Inc.,* 104 B.R. 659, 665 (D.N.J.1989)); *In re W.R. Grace & Co.,* 386 B.R. 17, 32 (Bankr.D.Del. 2008) (applying the traditional standards for injunctive relief with respect to a request to extend a preliminary injunction under section 105(a)) (citing *In re Excel Innovations, Inc.,* 502 F.3d 1086, 1096 (9th Cir.2007)). As this Court explained in *Philadelphia Newspapers II,* a preliminary injunction is an extraordinary remedy that is only appropriate in limited circumstances. *Philadelphia Newspapers II,* 407 B.R. at 616; *see Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir.

2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir.1994)).

In order to be entitled to a preliminary injunction, the burden is upon the moving party to satisfy the following factors:

(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d Cir.2009) (quoting *United States v. Bell*, 414 F.3d 474, 478 n. 4 (3d Cir.2005)).[11] The concept of a reasonable likelihood of success under the first prong is interpreted by bankruptcy courts as the equivalent of the debtor's ability to successfully reorganize. *See Philadelphia Newspapers II*, 407 B.R. at 617 n. 15 (citing *Monroe Well*, 67 B.R. at 752–53).

Appellant Lane contends that the Bankruptcy Court abused its discretion by prohibiting Gross' participation in discovery with regard to her claims against the nondebtor co-defendants in the Lane Action, namely CBS, Colleran, and Mendte.

The Bankruptcy Court found that it was appropriate to extend the Injunction to Gross. Although the Bankruptcy Court did not address each of the factors individually in its August 5 Opinion, it addressed each factor in the original opinion. *See Philadelphia Newspapers I*, 410 B.R. at 414–15.[12] In its August 5 Opinion the Bankruptcy Court further elaborated that in light of the Debtors' potential indemnification obligations to its employees, in the absence of an injunction the Debtors would be forced to spend time, money, and effort with respect to each pending suit. *Id.* at 414. The Bankruptcy Court also found that "[t]his case, a large and complex Chapter 11 with many employees being sued, presents the unusual circumstance of a Debtor needing the time and space of a § 105 injunction extended to non-debtor employees." *Id.* The Bankruptcy Court further concluded that unless all the pending litigation was stayed completely, it would serve to divert the attention of the Debtors' key personnel, and that allowing Lane to proceed with discovery could open the floodgates to allow all other litigants to pursue the same course. *Id.* at 415. The Bankruptcy Court found that the "cumulative effect" of the litigation against the Debtors and their employees on the Debtors' reorganization efforts "could be enormous," and therefore determined that imposition of the Injunction to all aspects of pending litigation, including Lane's discovery against Gross, was necessary. *Id.*

The Bankruptcy Court acknowledged that Lane was prejudiced by the delay

---

**11.** In considering a request for an injunction, these four factors are not weighed simultaneously against one another. Rather, the Court determines whether the first two threshold prongs are established, and if so, only then does it proceed to consider the third and fourth factors. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir.2002).

**12.** In its original opinion, the Bankruptcy Court concluded that it was necessary to grant the Debtors' request to issue the Injunction based upon the following: (1) a reasonable likelihood of successful reorganization was demonstrated by the Debtors; (2) a danger of irreparable harm existed since continuation of state court litigation would distract the Debtors' key personnel from the focus of reorganization; (3) the balancing of harm between the parties favored the Debtors, particularly in light of the relatively short period of the Injunction; and (4) the public interest in the successful reorganization of a local institution trumped a state claimant's right to redress. *Id.* at 617.

imposed by the Injunction, but after weighing the relative harm between all the parties, the Bankruptcy Court found that the equities favored the Debtors' position. *Id.*

The Court concludes that Lane has failed to meet her burden of showing that the Bankruptcy Court abused its discretion in refusing to tailor the Injunction to allow discovery from Gross to continue. As explained above, the Bankruptcy Court determined that allowing such discovery would interfere with the Debtors' reorganization in light of the diversion of the Debtors' attention to monitor discovery in the Lane Action.[13] Based upon the deferential standard to be applied to the decision of the Bankruptcy Court to issue an injunction pursuant to section 105(a), the Court concludes that Lane has failed to demonstrate that an abuse of discretion occurred.

The Third Circuit's decision in *In re W.R. Grace & Co.*, 115 Fed.Appx. 565 (3d Cir.2004) (non-precedential opinion), while not binding precedent, is supportive of this result. In *W.R. Grace*, the Third Circuit was presented with the question of whether the Bankruptcy Court abused its discretion, in responding to a request for clarification, by refusing to modify a section 105 injunction to allow litigation to proceed against the debtor's worker's compensation insurance carrier. *Id.* at 568. The Third Circuit reiterated that "[a] decision by a bankruptcy court whether or not to clarify or modify a § 105 injunction is an equitable one, and issues within the equita-

ble discretion of a bankruptcy court should be overturned only for abuse of discretion," and that the burden was upon the movants to demonstrate that the injunction was improper when applied to them. *Id.* (citing *Penn Terra, Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 274 (3d Cir. 1984)).

The movants in *W.R. Grace* argued that the injunction should not apply to them because the litigation would not directly affect the debtor since the claims were asserted only against the insurance carrier, although the movants acknowledged that they would seek discovery against the debtor in pursuing their claims against the debtor's insurance carrier. *Id.* at 569. The Bankruptcy Court in *W.R. Grace* refused to modify the injunction since the prospect of indemnification by the debtor necessitated the stay, and in spite of the movants' contention that the discovery requested from the debtor would not disrupt the reorganization process. *Id.*

On appeal, the Third Circuit concluded that it had "little difficulty" in finding that the movants could not satisfy their burden of demonstrating that the Bankruptcy Court abused its discretion in refusing to modify the stay. *Id.* The Third Circuit noted that courts employ a "broader view of the potential impact on the debtor" and found that a stay is appropriate where the litigation "could interfere with the reorganization of the debtor, or would interfere with, deplete or adversely affect property of [the] estates or which would frustrate the statutory scheme of chapter 11 or di-

---

**13.** Lane's counsel has argued that the discovery sought involves only Gross and would not interfere with the Debtors, as she seeks only Gross' deposition and certain documents created by Gross. The Debtors respond, however, that because of the coextensive interest between the Debtors and Gross based upon the Debtors' alleged indemnification obligations, the Debtors' personnel would need to

monitor Gross' participation in discovery in the Lane Action. Furthermore, the Debtors emphasize that any documents created during Gross' employment are the Debtors' proprietary property, and not Gross' individual property. Therefore, although the target of Lane's intended discovery is Gross, the discovery she seeks to obtain implicates the interests of the Debtors as well.

minish [the debtor's] ability to formulate a plan of reorganization." *Id.* at 570 (internal quotation marks and citations omitted and alterations in original).

Finally, Appellant Lane is not without a potential avenue of relief to proceed with the requested discovery separate and apart from any general bar to litigation against the other employees of the Debtors. To the extent that Lane wishes to take limited discovery from the Debtors or their employees, which according to her will have a *de minimis* impact on both Gross and the Debtors, this request and the attendant exigent circumstances should be presented in the first place to the Bankruptcy Court, which is in the best position to evaluate it, in the form of a request for a limited modification of the Injunction.

## III. CONCLUSION

For the reasons discussed above, the decision of the Bankruptcy Court to extend the Injunction to Gross is **AFFIRMED.** An appropriate order will issue.

### *ORDER*

**AND NOW,** this **11th** day of **January, 2010,** it is hereby **ORDERED** that the August 5, 2009 decision of the Bankruptcy Court to extend the protection of the 11 U.S.C. § 362(a) stay to the Non–Debtors and issue an injunction, pursuant to 11 U.S.C. § 105(a), enjoining any action or action or legal proceeding, including discovery, is **AFFIRMED.**

**AND IT IS SO ORDERED.**